**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| PRINCESS RUSSELL, on behalf of herself individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>AFLAC INCORPORATED,<br><br>　　　　　　Defendant. | CASE NO. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff PRINCESS RUSSELL ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant AFLAC INCORPORATED ("Aflac" or "Defendant") on behalf of herself, and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.　　This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach").

2.　　The Data Breach resulted in unauthorized disclosure, exfiltration, theft, and dissemination on the dark web of Defendant's clients' current and former employees' highly personal information, including, on information and belief, names, Social Security numbers, insurance claims information and other demographic data ("personally identifying information" or

1

"PII"), and medical information, such as health insurance information ("protected health information" or "PHI"). Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

3.    Aflac's Data Breach affects current and former employees of Defendant's clients who had no relationship with Aflac, never sought one, and never consented to Aflac collecting and storing their information.

4.    Aflac sourced their information from third parties, stored it on its systems, and assumed a duty to protect it, advertising that "[w]e work to ensure information integrity and security."[1] But Aflac never properly implemented the security safeguards it promised despite acknowledging their importance.

5.    Due to the paltry amount of information Aflac has provided about the Data Breach, it is unknown when exactly the breach occurred or how many individuals have been affected. However, Aflac issued a public notice and press release[2](the "Beach Notice") and Plaintiff received a notices about the Data Breach to from her employer[3] on or around June 20, 2025.

6.    According to the Breach Notice, the Data Breach affected individuals in Defendant's "U.S. businesses."[4] Further, Aflac has admitted that the Data Breach appears to be the perpetuated by Scattered Spider, a known cybercriminal group.[5]

7.    Accordingly, Plaintiff and the Class had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss

---

[1] *Privacy Practices*, AFLAC, https://www.aflac.com/about-aflac/privacy-practices.aspx (last visited June 23, 2025).
[2] Aflac's Breach Notice is attached hereto as **Exhibit A**.
[3] Plaintiff's Breach Notice is attached hereto as **Exhibit B**.
[4] Ex. A.
[5] Sean Lyngaas, *Cybercriminals breach Aflac as part of hacking spree against US insurance industry*, CNN (June 20, 2025) https://www.cnn.com/2025/06/20/tech/aflac-cyberattack.

of their privacy from having their Sensitive Information disseminated on the dark web and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

8.      Due to its lack of direct notice about the Data Breach to the Class, Aflac has obfuscated the nature of the breach and the threat it posted—refusing to tell breach victims when exactly the breach occurred, how the breach happened, or how many individuals have been affected.

9.      Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to effectively use up-to-date security practices to prevent the Data Breach.

10.     Plaintiff Princess Russell is a Data Breach victim.

11.     Accordingly, Plaintiff, on her own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

12.     The exposure of one's Sensitive Information to cybercriminals is a bell that cannot be unrung. Before this data breach, Defendant's clients' current and former employees' private information was exactly that—private. Not anymore. Now, the Class's Sensitive Information is forever exposed and unsecure.

## PARTIES

13.     Plaintiff Princess Russell is a natural person and citizen of Florida, residing in Miami Florida, where she intends to remain. Plaintiff is a Data Breach victim, having received insurance services from Defendant through her employer.

14.     Defendant, Defendant is a corporation organized under the laws of the State of Georgia, maintaining its principal place of business at 1932 Wynnton Rd, Columbus, Georgia, 31999.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and Plaintiff and Defendant are citizens of different states.

16.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and does substantial business in this District.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

*Aflac*

18.     Aflac states it is "a leader in supplemental health insurance companies" and also provides term and whole insurance plans.[6] Aflac's claims to provide insurance to over 50 million people worldwide.[7]

19.     As part of its business, Defendant receives and maintains the Sensitive Information of thousands of its clients' current and former employees. In collecting and maintaining the Sensitive Information, Defendant agreed it would safeguard the data in accordance with its internal

---

[6] *What is Supplemental Health Insurance?* AFLAC, https://www.aflac.com/resources/health-insurance/what-is-supplemental-health-insurance.aspx (last visited June 23, 2025).
[7] *Aflac*, LINKEDIN, https://www.linkedin.com/company/aflac/ (last visited June 23, 2025).

policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their Sensitive Information.

20.    Indeed, in its statement of "Privacy Practices," boasts:

a.    "The personal information of our customers is of paramount importance to us;"

b.    "We use technology tools and design our business practices to help ensure that the personal information of our customers is properly gathered, stored and processed. We also work to maintain the security of, and internal and external access to, the personal information of our customers through the use of technology and our business practices;"

c.    "Aflac and our agents will safeguard, according to strict standards of security and confidentiality, any information we collect, receive or maintain about Aflac's customers. Aflac maintains administrative, technical, and physical safeguards to ensure the security and confidentiality of our customer information and records, to protect against anticipated threats or hazards to such records, and to protect against unauthorized access to or use of such information or records."[8]

21.    Despite recognizing its duty to do so, on information and belief, Aflac has not implemented reasonable cybersecurity safeguards or policies to protect its client's Sensitive Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Aflac leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to consumers' Sensitive Information.

---

[8] N 1.

***The Data Breach***

22.     Plaintiff received insurance services from Aflac through her employer, a client of Defendant.

23.     On information and belief, Defendant collects and maintains its clients' current and former employees' Sensitive Information in its computer systems.

24.     In collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

25.     According to Defendant's Breach Notice, on "June 12, 2025, Aflac Incorporated identified suspicious activity on our network in the United States."[9]

26.     Worryingly, Defendant admits the Data Breach "was caused by a sophisticated cybercrime group" that "used social engineering tactics to gain access to our network."[10] Defendant further states that it has launched an investigation, which is ongoing, but is aware that files containing "claims information, health information, social security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in our U.S. business" were affected by the Data Breach.[11]

27.     According to reports in the media, people "familiar with the investigation" of the Data Breach stated that it is consistent with "the techniques of a young and rampant cybercrime group known as Scattered Spider."[12]

---

[9] Ex. A.
[10] *Id.*
[11] *Id.*
[12] N. 5.

28.     Cynthia Daiser, who until last month was deputy assistant director of the FBI's Cyber Division and oversaw FBI teams investigating the hackers, told CNN that "If Scattered Spider is targeting your industry, get help immediately…They can execute their full attacks in hours. Most other ransomware groups take days."[13]

29.     The United States Cybersecurity and Infrastructure Security Agency ("CISA") issued an advisory regarding Scattered Spider, stating it engages "in data extortion and several other criminal activities."[14] CISA warns that the "Scattered Spider threat actors are considered experts in social engineering and use multiple social engineering techniques, especially phishing, push bombing, and subscriber identity module (SIM) swap attacks, to obtain credentials, install remote access tools, and/or bypass multi-factor authentication."[15]

30.     CISA additionally states that "[o]bservably, Scattered Spider threat actors have exfiltrated data after gaining access and threatened to release it without deploying ransomware; this includes exfiltration to multiple sites including U.S.-based data centers."[16]

31.     This is consistent with Aflac's Breach Notice, which stated that "our systems were not affected by ransomware."[17] Thus, it appears that the sole purpose of the Data Breach was to steal Plaintiff's and Class members' Sensitive Information.

32.     Indeed, according to Dray Agha, operations manager with Huntress, a cybersecurity firm,[18] Scattered Spider attacks are "purely financially motivated" and are the result of "weaknesses that have been there for years… What's new is that attackers are now seemingly going

---

[13] *Id.*
[14] Scattered Spider, CISA (Nov. 16, 2023), https://www.cisa.gov/news-events/cybersecurity-advisories/aa23-320a.
[15] *Id.*
[16] *Id.*
[17] Ex. A.
[18] *See Home Page*, HUNTRESS, https://www.huntress.com/ (last visited June 23, 2025).

after them more deliberately. These aren't random hits anymore; cybercriminals are picking targets they know are vulnerable and profitable."[19]

33.     Thus, on information and belief, Plaintiff's and the Class's Sensitive Information has already been published, or will be published imminently, on the dark web.

34.     To date, Aflac has made no public statements regarding Scattered Spider or the full extent of the Data Breach.

35.     Despite its duties and alleged commitments to safeguard Sensitive Information, Defendant did not in fact follow industry standard practices in securing its clients' current and former employees' Sensitive Information, as evidenced by the Data Breach.

36.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

37.     Defendant has offered Data Breach victims free credit monitoring;[20] however, this is entirely insufficient to protect Data Breach victims from the fallout of the Data Breach. Indeed, due to the circulation of their Sensitive Information on the dark web, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

38.     On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement

---

[19] Becky Bracken, *Large Retailers Land in Scattered Spider's Ransomware Web*, DARK READING (May 20, 2025), https://www.darkreading.com/threat-intelligence/large-retailers-scattered-spider-ransomware-web.
[20] Ex. A.

reasonable security measures, causing it to lose control over its clients' current and former employees' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice***

39.     In light of recent high profile data breaches at other insurance companies, Defendant knew or should have known that its electronic records and clients' Sensitive Information would be targeted by cybercriminals.[21] Indeed, in 2024, there were 29 data breaches in the insurance industry, some against major companies such as Fidelity Investments Life Insurance Co. and Prudential Financial.[22]

40.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[23] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[24]

41.     Furthermore, cyberattacks against the insurance industry have become increasingly common in recent years. In 2023, Insurance Business warned the sector that due to the "insurance industry's sheer size and scope, along with the substantial amount of sensitive data it manages and stores, make the sector a prime target for cybercrime."[25]

---

[21] Mark Rosanes, *The insurance industry cyber crime report: recent attacks on insurance businesses*, Insurance Business (June 12, 2023) https://www.insurancebusinessmag.com/us/guides/the-insurance-industry-cyber-crime-report-recent-attacks-on-insurance-businesses-448429.aspx.
[22] *Id.*
[23] *2021 Data Breach Annual Report*, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited June 21, 2025).
[24] *Id.*
[25] N. 21.

42.    In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[26]

43.    This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) cybercriminal groups were targeting entities such as Defendant, (ii) the groups were ferociously aggressive in their pursuit of entities such as Defendant, and (iii) cybercriminal groups were leaking corporate information on dark web portals.

44.    In light of the information readily available and accessible before the Data Breach, Defendant, having elected to store the unencrypted Sensitive Information of thousands of its clients in an Internet-accessible environment, had reason to be on guard for the exfiltration of the Private Information and Defendant's type of business had cause to be particularly on guard against such an attack.

45.    Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Sensitive Information could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

---

[26] *High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations*, FBI (Oct. 2, 2019), https://www.ic3.gov/Media/Y2019/PSA191002.

46.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its employees' Social Security numbers and other sensitive data elements within the Sensitive Information to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff Experience***

47.     Plaintiff Princess Russell received Defendant's insurance services through her employer, a client of Defendant. On information and belief, Defendant held Plaintiff's Sensitive Information on its computer network at the time of the Data Breach.

48.     Defendant obtained and continues to maintain Plaintiff's Sensitive information and has a continuing legal duty and obligation to protect that Sensitive information from unauthorized access and disclosure.

49.     As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

50.     Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

51.     Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

52.    Plaintiff suffered actual injury in the form of a loss of privacy due to her highly private Sensitive Information being disseminated and traded on the dark web.

53.    Plaintiff suffered additional actual injury and damages due to the diminution in the value of her Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

54.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of cybercriminal

55.    Plaintiff has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

56.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

57.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

   a.    The loss of the opportunity to control how their Sensitive Information is used;

   b.    The diminution in value of their Sensitive Information;

   c.    The compromise and continuing publication of their Sensitive Information;

   d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.  Delay in receipt of tax refund monies;

g.  Unauthorized use of stolen Sensitive Information; and

h.  The continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in its possession.

58.    Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

59.    The value of Plaintiff's and the Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

60.    It can take victims years to spot identity theft, giving criminals plenty of time to use that information to commit acts of identity theft and fraud.

61.    One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

62.    Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete

scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

63.    The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

64.    Defendant disclosed the Sensitive Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

***Defendant failed to adhere to FTC guidelines.***

65.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

66.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

a.  protect the sensitive consumer information that it keeps;

b.  properly dispose of Sensitive Information that is no longer needed;

c.  encrypt information stored on computer networks;

d.  understand their network's vulnerabilities; and

e.  implement policies to correct security problems.

67.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

68.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

69.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

70.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**Defendant Fails to Comply with Industry Standards**

71.     As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

72.     Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendants failed to follow these industry best practices, including a failure to implement multi-factor authentication.

73.     Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

74.     Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10,

PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

75.     These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its employees. Upon information and belief, Defendants failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff sues on behalf of herself and the proposed class ("Class"), defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> All individuals residing in the United States whose Sensitive Information was compromised in the Data Breach experienced by Defendant including all those who received notice of the breach.

77.     Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

78.     Plaintiff reserves the right to amend the class definition.

79.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

    a.  **Numerosity**. Plaintiff is representative of the Class, which, on information and belief, consists of thousands of members, far too many to join in a single action;

    b.  **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with the Class's interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

    i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

    ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    iii. Whether Defendant were negligent in maintaining, protecting, and securing Sensitive Information;

    iv. Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information;

    v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    vi. Whether Defendant's Breach Notice was reasonable;

    vii. Whether the Data Breach caused Plaintiff's and the Class's injuries;

    viii.  What the proper damages measure is; and

    ix.  Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

80.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

81.    Plaintiff realleges all paragraphs as if fully set forth below.

82.    Plaintiff and members of the Class (or their third-party agents) entrusted their Sensitive Information to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the Sensitive Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

83.    Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Sensitive Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Sensitive Information —just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's Sensitive Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the

Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

84.     Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Sensitive Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

85.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Sensitive Information.

86.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect its clients' current and former employees' Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's Sensitive Information.

87.     Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

88.     Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew

or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's Sensitive Information.

89.    The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

90.    Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

91.    Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the Sensitive Information of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

92.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their

bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

93.    Plaintiff realleges all paragraphs as if fully set forth below.

94.    Plaintiff and Class Members either directly contracted with Defendant or Plaintiff and Class Members were the third-party beneficiaries of contracts with Defendant.

95.    Plaintiff and Class Members (or their third-party agents) were required to provide their PII/PHI to Defendant as a condition of receiving services provided by Defendant. Plaintiff and Class Members (or their third-party agents) provided their Sensitive Information to Defendant or its third-party agents in exchange for Defendant's services.

96.    Plaintiff and Class Members (or their third-party agents) reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

97.    Plaintiff and Class Members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

98.    Plaintiff and the Class Members (or their third-party agents) accepted Defendant's offers by disclosing their Sensitive Information to Defendant or its third-party agents in exchange for services.

99.    In turn, and through internal policies, Defendant agreed to protect and not disclose the Sensitive Information to unauthorized persons.

100.    In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's Sensitive Information.

101.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their Sensitive Information.

102.    After all, Plaintiff and Class Members (or their third-party agents) would not have entrusted their Sensitive Information to Defendant (or their third-party agents) in the absence of such an agreement with Defendant.

103.    Plaintiff and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendant.

104.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

105.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

106.    Defendant materially breached the contracts it entered with Plaintiff and Class Members (or their third-party agents) by:

a.  failing to safeguard their information;

b.  failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c.  failing to comply with industry standards;

d.  failing to comply with the legal obligations necessarily incorporated into the agreements; and

e.  failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendant created, received, maintained, and transmitted.

107.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

108.    Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed supra).

109.    And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

110.    Plaintiff and Class Members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

111.    Plaintiff realleges all paragraphs as if fully set forth below.

112.    Plaintiff and Class members (or their third-party agents) conferred a benefit upon Defendant. After all, Defendant benefitted from using their Sensitive Information to provide dental retail software services.

113.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members (or their third-party agents). And Defendant benefited from receiving

Plaintiff's and Class members' Sensitive Information, as this was used to provide dental benefit services.

114.     Plaintiff and Class members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

115.     Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' Sensitive Information.

116.     Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

117.     Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' payment because Defendant failed to adequately protect their Sensitive Information.

118.     Plaintiff and Class members have no adequate remedy at law.

119.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

## PRAYER FOR RELIEF

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

Dated: June 23, 2025                    Respectfully submitted,

                                        By: */s/ Andrew J. Shamis*
                                        Andrew J. Shamis (GA Bar No. 494196)
                                        **SHAMIS & GENTILE, P.A.**
                                        14 NE 1st Avenue, Suite 705

Miami, FL 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com


Raina Borrelli*
**STRAUSS BORELLI PLLC**
One Magnificent Mile
980 N Michigan Ave, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorneys for Plaintiff and Proposed Class*

*\*Pro Hac Vice forthcoming*